## WILLIAM KELSEY REED *et al.*

### *v.*

### THE PEOPLE *ex rel.* George Hunt, Attorney General.

*Filed at Springfield September 27, 1888.*

1.   BANKS AND BANKING—*corporations with banking powers—what so regarded.* Banks, in a commercial sense, are of three kinds, to-wit: First, of deposit; second, of discount; and third, of circulation. A corporation authorized to receive deposits, discount notes and invest the proceeds in public securities, and declare credits or dividends, must be regarded as having banking powers, although it may not have stockholders.

2.   SAME—*act of 1887 relating to savings societies, etc.—its constitutionality—as conferring banking powers.* The act of 1887, entitled "An act to provide for the organization of savings societies or institutions for savings, for their supervision, and for the administration of their affairs," confers banking powers, and not having been adopted by a vote of the people, is in conflict with section 5, article 11, of the constitution, and is therefore void.

3.   The fact that the act declares that no corporation organized under it shall be deemed a bank or company having or exercising banking powers, will not render it a valid law, for the reason that other sections, by plain and express words, do confer banking powers. In determining whether the act is obnoxious to the constitutional prohibition, the court will look to the powers in fact conferred by it, notwithstanding some part may declare that corporations thereunder shall not be deemed to be banks.

4.   CONSTRUING THE CONSTITUTION—*rule of construction.* In placing a construction on one section of the constitution, it is proper to refer to any other section of that instrument relating to the same subject, and consider them together, in order to arrive at the true intention of its framers.

APPEAL from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

Messrs. SMITH & PENCE, for the appellants:

The statute in question does not fall within the constitutional prohibition, for the reasons: First, it does not confer banking powers; second, the associations provided for by the act are not banks of deposit or discount; third, the banks of deposit or discount referred to in the constitution are corporations having stockholders; and fourth, the associations created are fiduciary, eleemosynary or charitable institutions, and the fund created belongs to the depositors, and the ordinary relation of debtor and creditor is not created by such deposits.

Words of a constitutional provision are to be construed according to the sense in which they were employed at the time of framing the instrument, and not according to their strict technical import. *People ex rel.* v. *Loewenthal,* 93 Ill. 191; *Comstock* v. *Gage,* 91 id. 328; *People* v. *Marshall,* 1 Gilm. 672; *Holmes* v. *Smythe,* 100 Ill. 413.

The corporation in question is in no sense a bank of deposit or discount, but a simple agent for the investment of the money of its depositors, and the ordinary relations of debtor and creditor do not exist. *Huntington* v. *Savings Bank,* 96 U. S. 388; *Harmon* v. *Williams,* 34 N. J. Eq. 255; *Bunnell* v. *Savings Society,* 38 Conn. 203; *Osborne* v. *Byrne,* 43 id. 155; *Cogswell* v. *Savings Bank,* 59 N. H. 43; 28 N. J. Eq. 532; 92 Pa. St. 134; 9 Cush. 604; *Grant's Law of Bankers,* 571; *Coite* v. *Society for Savings,* 32 Conn. 173.

Mr. GEORGE HUNT, Attorney General, for the People:

As to what constitutes a bank or banking powers, see Bouvier's Law Dic. title "Bank;" *People* v. *Doty,* 80 N. Y. 225; *Kennedy* v. *Knight,* 21 Wis. 345; *Pratt* v. *Short,* 79 N. Y. 437; *Tishimingo Institution* v. *Buchanan,* 60 Miss. 496; *Insurance Co.* v. *Ely,* 2 Cow. 678; *Kieth* v. *Catchings,* 64 Ga. 773; *Bank* v. *Savery,* 82 N. Y. 291.

Savings banks which receive deposits, and lend the same for the benefit of their depositors, although they may have no capital stock, and neither make discounts nor issue any money for circulation, are "engaged in the business of banking." See *Bank* v. *Collector*, 3 Wall. 495; *Oulton* v. *Savings Institution*, 17 id. 109; *People* v. *President*, 9 Wend. 351; Angell & Ames on Corp. sec. 55.

The purchasing and discounting of paper is only a mode of loaning money. Morse on Banking, 8; *Smith* v. *Exchange Bank*, 26 Ohio St. 141.

Receiving money on deposit is the exercise of a banking power. *Rupert* v. *Roney*, 22 Ill. 325.

Receiving money on deposit, loaning money, buying and selling notes, bonds and other securities, are banking powers. *Ward* v. *Johnson*, 95 Ill. 215.

Banking powers have been defined as consisting of the right of issuing negotiable notes, discounting notes, and receiving deposits. *People* v. *President Manhattan Co.* 5 Conn. 383; *People* v. *Insurance Co.* 15 Johns. 390; *Duncan* v. *Savings Institution*, 10 G. & J. 309.

Receiving deposits from customers is a part of the usual banking business. *Marine Bank* v. *Fulton Bank*, 2 Wall. 252; *Savings Bank* v. *Hollenbeck*, 29 Minn. 322.

A corporation which is forbidden to exercise "banking privileges" can not lawfully exercise the power of discounting notes. *Receivers* v. *Katz*, 57 Md. 138.

A corporation which is forbidden to exercise banking powers can not loan money upon promissory notes. *Insurance Co.* v. *Ely*, 2 Cow. 678.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was a proceeding instituted by the Attorney General to test the validity of an act of the legislature, entitled "An act to provide for the organization of savings societies, or institutions for savings, for their supervision, and for the administration

of their affairs," which was enacted by the legislature in 1887. Laws of 1887, p. 77.

Whether the act was one calculated to advance the prosperity or welfare of any portion of the people of the State, is a question which might admit of debate. That, however, is a question addressed to the legislative department of the government,—one upon which the court is not called upon to speak. The only point presented to the court upon which we are called upon to determine, is, whether the act is constitutional.

Section 5, article 11, of the constitution, is as follows : "No act of the General Assembly authorizing or creating corporations or associations with banking powers, whether of issue, deposit or discount, nor amendments thereto, shall go into effect, or in any manner be in force, unless the law shall be submitted to a vote of the people at the general election next succeeding the passage of the same, and be approved by a majority of all the votes cast at such election for or against such law."

The act in question was not submitted to a vote of the people, and if it is one authorizing or creating corporations with banking powers, of either issue, deposit or discount, it is prohibited by the constitution. The defendant corporation, as organized, is known as the "Chicago Society for Savings." Whether it may or may not be a savings bank, is not the inquiry here; but the question is, whether the act under which the defendant organized, confers upon it banking powers of issue, of deposit, or of discount. In section 15 of the act it is declared, that no such corporation organized under the act shall be deemed a bank or company having or exercising banking powers. But these declarations do not affect the powers conferred, nor do they limit the authority of the corporation. Whether the corporation may be called a bank or not, is a matter of no moment. If any of the sections of the act, in plain and express words, confer banking powers, the character of the corporation is to be determined from the powers thus

conferred, and not from the fact that some portions of the act declare that the corporation shall not be deemed a bank.

The constitution of 1848 contained a provision that no act of the General Assembly authorizing corporations with banking powers, should go into effect unless submitted to and ratified by the people at a general election. It will be observed that the provision of our present constitution relating to the same subject is more specific and far-reaching than the old constitution, prohibiting, as it does, an act authorizing or creating corporations or associations with banking powers, whether of *issue, deposit* or *discount.* This court held in *The People* v. *Lœwenthal,* 93 Ill. 193, that the prohibition in the old constitution related only to banks of issue; but that decision has no bearing on the present inquiry.

There ought not, however, to be any serious difficulty in determining what was intended by the words, "banking powers," as used in the constitution of 1870. We think the language employed should be used in its common, ordinary sense, and when this is done, the banking powers referred to mean such as are ordinarily conferred upon and used by the various banks doing business in the country. The ordinary and usual powers exercised by banks are to discount notes and receive deposits. They may, and often do, possess other powers; but these are the ordinary and usual powers conferred upon and exercised by banks and bankers. Bouvier, in defining a bank, says: "A place for the deposit of money; an institution (generally incorporated) authorized to receive deposits of money, to lend money and issue promissory notes, (usually known by the name of bank-notes,) or to perform some one or more of these functions." "Banks are said to be of three kinds,— deposit, discount and circulation." (See, also, *The People* v. *Doty,* 80 N. Y. 225; *Pratt* v. *Short,* 79 id. 437.) Speaking in a commercial view, Bouvier is doubtless correct in his definition of a bank; but one of the chief characteristics and one of the most essential elements of a bank, as that term is ordinarily

understood, is that it is a place for the deposit of money. The powers and functions of a bank are well stated in *Oulton* v. *Savings Institution*, 17 Wall. 117, as follows: "Banks, in the commercial sense, are of three kinds, to-wit: First, of deposit; second, of discount; third, of circulation. Strictly speaking, the term 'bank' implies a place for the deposit of money, as that is the most obvious purpose of such an institution. Originally, the business of banking consisted only in receiving deposits,—such as bullion, plate, and the like,—for safe keeping, until the depositor should see fit to draw it out for use; but the business, in the progress of events, was extended, and bankers assumed to discount bills and notes, and to loan money upon mortgage, pawn, or other security, and, at a still later period, to issue notes of their own, intended as a circulating currency, and a medium of exchange instead of gold and silver. Modern bankers frequently exercise any two, or even all three, of those functions, but it is still true that an institution prohibited from exercising any more than one of those functions is a bank, in the strictest commercial sense."

Another interesting case upon the same subject is *Bank for Savings* v. *The Collector*, 3 Wall. 495. The act under which the bank was incorporated, was, in many respects, similar to the act under which appellant is incorporated. The bank had no capital stock. It had no shareholders. No corporators were interested in the profits. The corporators were trustees, who constituted a board of managers. The question arose whether the incorporation was engaged in the business of banking, within the meaning of the United States Revenue law, and the court held that savings banks which receive deposits, and lend the same for the benefit of depositors, although they may have no capital stock, and neither make discounts nor issue any money for circulation, are engaged in the business of banking, within the meaning of the Revenue law, which provides for a tax upon any person, bank, association or company engaged in the business of banking.

In *People* v. *President of Manhattan Co.* 9 Wend. 383, the court, in speaking of the powers of banks, says: "Banking powers have been defined by this court to consist in the right of issuing negotiable notes, discounting notes, and receiving deposits. 15 Johns. 390, per SPENCER, J.; 2 Cow. 710, per SAVAGE, Ch. J."

We will now examine briefly some of the provisions of the act under which appellant corporation is organized, in order to determine whether banking powers of discount or deposit have been conferred.

Under section 10 of the act, the appellant is authorized to receive any sums of money for accumulation and safe keeping that may be offered, and to invest, hold and repay the same, and to declare credit, and pay dividends thereon. Section 11 authorizes the corporation to invest funds received, in stocks, bonds, interest-bearing notes, municipal obligations, mortgage bonds of railroad companies, and in bonds or notes and mortgages on unincumbered real estate. Section 14 provides that in making loans on real estate, the expenses of examination of titles shall be paid by the borrower. Section 16 provides a mode under which a depositor may withdraw funds deposited, under regulations to be established by the trustees of the corporation. Section 17 authorizes the trustees to classify the depositors. Section 19 requires the corporation to make annual reports, which, among other things, shall show the amount loaned on bond and mortgage. Such report shall also state all the liabilities on the morning of the first day of July, the amount due to depositors, the amount deposited during the fiscal year, and amount withdrawn during the same period, and amount of dividends credited to depositors.

Under the sections of the act we have referred to, the corporation is invested with full power to receive money on deposit and to discount notes. These are banking powers, as has been abundantly shown. In many of the sections of the act there seems to have been a labored effort to conceal the real

powers conferred upon the corporation and the relations exist-
ing between the corporation and its patrons; but in section 19
the mask seems to have been removed, and it is there plainly
disclosed that those who place their funds in the hands of the
corporation are depositors, and the corporation is dealing with
the depositors and using their funds as a bank.

But it is said, in the argument, that section 5, of article 9,
of the constitution, has reference only to banking corporations
with stockholders who own the bank, and hence as appellant
corporation has no stockholders, it is unaffected by the con-
stitution,—and in support of this position we are referred to
sections 6 and 8 of the same article. In placing a construction
on one section of the constitution, it is proper to refer to any
other section of the instrument relating to the same subject,
and consider the sections together, in order to arrive at the
true intention of the framers of the instrument. We do not
think section 6 has any bearing whatever on section 5, so far
as the question here involved is concerned. It is as follows:
"Every stockholder in a banking corporation or institution
shall be individually responsible and liable to its creditors,
over and above the amount of stock by him or her held, to an
amount equal to his or her respective shares so held, for all its
liabilities accruing while he or she remains such stockholder."
At the time the constitution was framed, there existed in the
State a number of banks organized and doing business under
special charters granted by the legislature, and section 6 was,
no doubt, framed with the view of fixing the liability of stock-
holders in such banks; and in the event that a general bank-
ing law should be passed and adopted by the people, section 6
was also no doubt intended to fix the liability of stockholders
in such a bank. Section 8 requires certain things to be done
in the event that a general banking law shall be enacted in the
future. It has reference to such a contingency, and nothing
more. The terms of section 5 are general. It prohibits any
act creating a corporation with banking powers, whether such

corporation may have stockholders or not, unless the law should be adopted by a vote of the people; and there is nothing in section 6 or 8 which limits this prohibition.

We have been referred to *Holmes* v. *Smythe,* 100 Ill. 413, and *Stevens* v. *Pratt,* 101 id. 206, as cases having a bearing on the question involved. The question involved in this record was not presented in either of those cases, and the decisions there have no bearing here.

We are satisfied that the act under which appellant organized is unconstitutional, and the judgment of the circuit court will be affirmed.     *Judgment affirmed.*