12564

DANIELS *ET AL.* v. BERRY *ET AL.*

(146 S. E., 420)

Messrs. *Joe P. Lane,* and *W. C. Moore,* for appellants,

Messrs. *M. C. Woods, L. D. Lide,* and *Gibson & Muller,* for respondents,

448

*Messrs. Spears & Want,* for respondents, 

January 18, 1929.

The opinion of the Court was delivered by Mr. Justice Stabler.

In 1925, the Bank of Latta closed its doors and a receiver was appointed to take charge of its affairs. Subsequently, this action was brought against the directors of the bank by the plaintiffs, certain of its depositors, upon the theory that the directors were liable to the plaintiffs, as depositors, for the loss of certain deposits made by them and received by the bank while insolvent. This appeal is from an order of his Honor, Judge Dennis, sustaining a demurrer to the complaint.

The allegations of the complaint, for the purposes of the demurrer, are taken to be true, and may be thus summarized: That the Bank of Latta was a corporation duly chartered and organized under the laws of the State, and that the defendants were the qualified and acting directors thereof; that the bank was insolvent from the——— day of ———, 1924, to the ——— day of February, 1925, at which time its doors were closed and a receiver appointed to administer its affairs; that during this time the insolvent condition of the bank was well known to the defendants, or by the exercise of such diligence as the law requires and required of them as directors should have been well known to them; that the plaintiffs, at different times between the dates named, and while the bank was insolvent, without knowing or being aware of its insolvency, were allowed by the defendants to make certain deposits in the

bank, and that each of them at the time of the closing of the bank had on deposit a certain named amount.

The complaint further alleged that since the closing of the institution, the receiver, Berry, had paid out to its depositors, including the plaintiffs, 10 per cent. in the way of dividends, but that the receiver had exhausted the resources of the bank and that nothing further remains to be paid to the depositors, including the plaintiffs.

The sixth paragraph of the complaint is as follows:

"That by reason of the negligence, mismanagement and unlawful conduct of these defendants as directors of said bank in receiving these deposits from the plaintiffs as hereinabove set forth while said bank was insolvent, or in permitting and allowing such deposits to be received by the officers of said bank and openly and publicly holding open the doors of said bank as a sound and solvent banking institution, while the same was insolvent and unsound, these plaintiffs have been damaged in the respective amounts appearing opposite their names above, less, however, ten per cent. thereof, on account of dividends already received by such plaintiffs, as aforesaid. That such loss and damage to these plaintiffs, as aforesaid, was brought about by and resulted from the careless and unlawful acts of the defendants as directors of said bank in receiving said sums from the plaintiffs for deposit, or in permitting same to be received at a time or times when said bank was insolvent, which insolvent condition was well known to said defendants as its directors at the time or times when such deposits were received, as aforesaid, or by the exercise of such case and diligence as was required of them by law as such directors, should have been known to them."

The complaint further alleges that the action was brought in the name of the plaintiffs for the benefit of themselves and all others like situated who may desire to come in and contribute to the costs thereof. The prayer is for judgment against the defendants, and each of them, for the amounts

set forth in the complaint and for such other relief as the Court may deem just.

From the demurrers printed in the record, it appears that the defendants demurred to the complaint upon two grounds, which may be stated in substance as follows: (1) That the complaint does not state facts sufficient to constitute a cause of action either at common law or under the statute; and (2) that the plaintiffs have no legal capacity to sue.

Judge Dennis, before whom the matter was heard, passed an order sustaining the demurrers. We quote so much of the order as gives the reasons for his conclusions:

"The above matter comes before me on demurrers of the several defendants, challenging the sufficiency of the complaint on the ground that the same does not state facts sufficient to constitute a cause of action. The matter has been fully argued before me by counsel for plaintiffs and defendants. It seems to me to be very clear that the sufficiency of the complaint must be tested by the provisions of Section 3973, Volume 3, of the Code of 1922 (this provision being also contained in the Penal Code, Volume 2, where it is designated as Section 241). Unless a cause of action is set forth within the terms of that statute, I do not think that the plaintiffs can maintain the present action.

"Viewed in this light, it seems to me that the complaint undertakes to state a cause of action that would render the defendants liable to the plaintiffs on grounds and under conditions other than those set forth in the statute and for this reason I think that the demurrer should be sustained."

The plaintiffs appeal from the Court's order and assign error in two particulars: (1) Error in holding that the allegations of the complaint do not state a cause of action under Section 3973 of Code 3 of 1922; and (2) error in holding that, the liability imposed by this section being exclusive, the complaint does not state a cause of action independent of and outside of the statute. We shall consider these questions in inverse order.

I. Are the directors of a bank liable at common law to one who deposits money therein after the bank has become insolvent, thereby suffering loss, and if so under what circumstances? Upon well-established principles, there can be no question that in such case, if the deposit is induced by fraud or deceit on the part of the directors, they would be liable. The present case, however, is not grounded on fraud or deceit, but only on passive negligence; and the question at issue therefore is whether, under the common law, a director who negligently allows a deposit of money in an insolvent bank, after he knows or should have known by the exercise of due care that the bank was insolvent, is liable to the depositor suffering loss on account of the insolvency. The answer to this question necessitates an inquiry into the relationship between depositors and directors—whether there is such relationship as would fix liability. upon the directors under such circumstances.

In the cases involving this question some confusion has arisen through failure to distinguish clearly between the directors' relationship to the bank itself and that to depositors. Unquestionably directors, as the agents of the bank, owe to the bank itself the duty to exercise ordinary care in the management of its affairs. A violation of that duty would constitute negligence, and the bank, or its receiver when one has been appointed, or the creditors if the receiver should refuse to sue, may bring an action for the benefit of the bank against the directors for such negligence. A violation of the directors' duty to the bank, however, could not give rise to a cause of action in favor of the depositors, and any cause of action which the latter may have must be based upon some violation of a duty owing to them by the directors.

The depositor makes no contract with directors as individuals, his contract being entirely with the bank in its separate entity. Nor can we see any implied contract between the depositor and the directors as individuals, since

the directors are only agents of the bank. It is suggested, however, that on account of the status of the parties the directors bear the relation of trustees to the depositors. On this question opinion is divided, but we think the better view to be that directors are not such trustees. Depositors do not deal with the directors, but with the bank itself, and the relationship between them and the bank is that of debtor and creditor; under these conditions, we cannot see how there could arise any such relationship between the directors, who are merely agents of the bank, and the depositors, as would create the former trustees of the funds of the latter placed on deposit in the bank.

In 3 R. C. L., at page 469, it is said:

"Aside from constitutional or statutory provisions, the directors or officers of an incorporated bank are not individually responsible, in an action at law, for injury resulting to a creditor or depositor, unless the injury was occasioned by the malicious or fradulent act of the person complained of. Mere nonfeasance will not answer; nothing short of active participancy in a positively wrongful act intentionally and directly operating to the prejudice of the person complaining will give origin to individual liability. As heretofore shown the better rule is that when the bank incurs losses through the merely negligent manner in which the directors perform their duties, the liability is one which accrues to the corporation, and gives no right of action to the bank's creditors as such."

And at page 474:

"There is nothing of either contract or trust, in all ordinary cases, to create any relation between the depositors of a bank and its directors, and at common law it would seem that there was no personal liability on the part of the directors to depositors merely on account of their assent to the receipt of deposits with the knowledge that the bank was insolvent."

In 7 C. J., at page 565, we find:

"The directors of a bank are liable only to the corporation whose agents they are for violation or neglect of official duty; and, in the absence of actionable deceit, they are not liable to a creditor of the corporation for loss suffered through the neglect of their official duties."

In 21 Am. & Eng. Ency. of Law (2d Ed), page 881:

"As a general rule, officers and directors of a corporation are not trustees of the corporate creditors and are not liable to them for negligence or mismanagement of the company's business, resulting in its insolvency, unless made so by charter or statute."

Mr. Thompson, in his valuable treatise on Corporations (volume 4, §4137), says:

"We find that it has been held that the fact that directors and officers of a corporation have mismanaged its business does not render them liable to creditors, unless they are made liable by the provisions of the articles of incorporation or by statute."

And again, in section 4138:

"Neither, in the absence of a special statute, are the directors of a bank liable to a general depositor for mismanaging the affairs of the bank so that his debt is lost, for, unless they are made liable by statute, the breach of duty of which they have been guilty is to the bank, and not to the customers."

*Hart v. Hanson,* 14 N. D., 570, 105 N. W., 942, 3 L. R. A. (N. S.), 438, is closely analogous to the case at bar, being an action to hold a director of a bank liable for losses which the plaintiff sustained as surety upon a bond executed to indemnify the county against loss of a deposit of county funds in the bank. The action was based upon a charge, among others, that the bank accepted deposits from the county after it became insolvent, its insolvency being then known to the defendant. The allegations and proof showed "gross neglect by the defendant of his duties as

a director, and no attempt on his part to have the bank discontinue business by reason of insolvency," though he knew the bank was insolvent when the deposits were made. In reversing a judgment for the plaintiff, the Court said:

"The fallacy which underlies each of the several theories upon which respondent seeks to sustain his right to recover in this action, is the assumption that the directors of a banking corporation owe some duty individually to each creditor of the corporation. That assumption is erroneous The creditor deals with the corporation and contracts with it, not with the individual directors. The directors are agents or representatives of the entire body of stockholders, and the relationship between the corporation and the directors is that of principal and agent. The agency of course implies a trust, but the obligations imposed by the trust are solely to the corporation whose agents and trustees they are, and like all other agents they are accountable for their stewardship to their principal alone. Creditors of the corporation are utter strangers to the obligations of the directors to the corporation."

*Union National Bank v. Hill*, 148 Mo., 380, 49 S. W., 1012, 71 Am. St. Rep., 615, was a suit by general creditors of a defunct bank against the directors, based on alleged negligence and mismanagement of the directors. The testimony showed "the most absolute and unqualified inattention and neglect by the directors." The Court held that the directors were liable to the corporation, while it was a going concern or to the assignee after the assignment, for losses sustained by reason of their negligence, but sustained a judgment for the defendants, disavowing the theory that the directors of a bank occupy the position of trustee toward its creditors.

*Savings Bank v. Caperton*, 87 Ky., 306, 8 S. W., 885, 12 Am. St. Rep., 488, was a suit by depositors against directors to recover for deposits lost through the embezzlement

of the cashier. The Court considered the question of the directors' negligence and laid upon them the duty of conducting the affairs of the bank in good faith and with ordinary care and diligence, but made it clear that this was a duty owing to the bank and not to the depositors:

"Directors are under no personal liability to the creditors of a bank by reason of a neglect of duty. They are the agents of the corporation, and could only be sued in this case by the creditor because of the refusal of the assignee to sue. * * * So, at last, it is the bank suing the directors in this case for a neglect of duty. * * *"

In *U. S. F. & G. Co. v. Corning State Savings Bank,* 154 Iowa, 588, 134 N. W., 857, 45 L. R. A. (N. S.), 421, the Court said:

"Our sole present inquiry is whether directors are liable for negligence only to a creditor of the corporation suing in his own right and for his sole benefit to recover damages which he has suffered through the insolvency of the corporation. We are of the opinion that the great weight of authority holds that directors are not liable in such an action for mere negligence, unless liability is imposed by statute, and that this Court has so held in effect, if not directly. * *

"Our conclusion is that, where a creditor of a corporation sues in his own personal right to recover from a director losses which he has sustained by extending credit to the corporation, his action must be founded on deceit, and not upon negligence. * * *"

In *Deadrick v. Bank of Commerce,* 100 Tenn., 457, 45 S. W., 786, the Court held:

"That directors are liable in an action at law to their principal, the corporation, for losses resulting to it from their malfeasance, misfeasance, or their failure or neglect to discharge the duties imposed by their office, and in equity, to the stockholders, for these losses, the corporation declining to bring suit, is clear, upon the authorities. Though

the corporation is the legal entity, yet the stockholders are interested in the operations of the corporation while in a state of activity, and, upon its dissolution, in the distribution of its property, after all debts are paid; and so its officers or agents stand in a fiduciary relation to both. But it is otherwise as to creditors. The directors of a going corporation, whether able to pay its debts or not, owe no allegiance to them. It is true that the creditors may extend credit upon the faith that the company has assets to pay its debts, and that these assets are prudently managed, yet they are strangers to the directors; they maintain no fiduciary relation with them; there is a lack of privity between the two. * * * A creditor of a going corporation, being thus a mere stranger, we think it clear that he can no more, after the suspension of the corporation by insolvency, either in law or equity, set in motion litigation to hold its directors liable for losses attributable merely to inattention, than could the creditor of any other insolvent debtor maintain a suit against his agent, under similar circumstances. In such a case as the one we are dealing with—that is, loss to the corporation resulting from mere negligence on the part of its directors—a creditor seeking to hold the directors liable for this loss, even in a suit like this, must rest his claim upon some provision of positive law."

In *Landis v. Hotel Co.,* 53 N. J. Eq., 654, 33 A., 964, the complainant was both a stockholder and a creditor of an insolvent corporation and was endeavoring to hold its directors liable for losses sustained by their mismanagement. The Court made a clear distinction between the directors' liability to the complainant in these two capacities, holding that they would be liable to him as a stockholder, but not to him as a creditor, for losses resulting from their negligence, the reason for the distinction being that they bore a fiduciary relationship towards him in so far as he was a stockholder, but not in so far as he was a creditor.

*Swentzel v. Penn Bank,* 147 Pa., 140, 23 A., 405, 415, 15 L. R. A., 305, 30 Am. St. Rep., 718, was an action by the assigne of a bank for the benefit of its creditors to hold the directors individually liable for certain amounts which had been fraudently abstracted from the bank by its officers and lost in speculation For the purposes of that case, the Court seems to have considered the duty which the directors owed to stockholders and that which they owed to depositors as identical or closely similar, but held that "directors, who are gratuitous mandataries, are only liable for fraud or for such gross negligence as amounts to fraud."

In *Fusz v. Spaunhorts,* 67 Mo., 256, the Court said:

"Aside from statutory provisions or one of similar na- ture in the organic law, the directors or officers of an incorporated bank would not be individually responsible in an action at law, for injury resulting to a creditor or depositor, unless the injury were occasioned by the malicious or fraudulent act of the party complained of. Mere nonfeasance will not answer; nothing short of active participancy in a positively wrongful act intendedly and directly operating injuriously to the prejudice of the party complaining will give origin to individual liability. * * *"

In *Robinson v. Hall* (C. C.), 59 F., 648, which was an action to charge directors of a bank with personal liability for certain losses alleged to have occurred through their negligence, the Court said:

"Courts will not ordinarily give relief against directors to the extent of holding them personally liable, unless in cases of active or passive fraud or extreme negligence. Mere neglect to fully inform themselves of the affairs of the bank, even to the extent that they could be ascertained by an inspection of its books, is not held to be gross negligence, unless, perhaps, in cases where grounds of suspicion of the good conduct of their officers exist, and have come to their knowledge, or may reasonably be supposed to have been

known to them. They are pecuniarily interested as stock-holders in the faithful conduct of their officers, and it would be considered unjust for any slight reason to hold them further liable to what in many cases would be the total ruin, by liability for the losses of the bank in case of its failure."

See, also, *Briggs v. Spaulding,* 141 U. S., 132, 11 S. Ct., 924, 35 L. Ed., 662.

There are numerous other authorities to the same general effect, but we deem further citations unnecessary. Our conclusion, in the light of the view herein expressed as to the relationship between directors and depositors, is that the complaint in this case does not state a cause of action under the common law.

We are well aware that there are authorities, both among the text-writers and the decided cases, supporting the contrary view. In some of these cases, the directors violated statutes regulating the management and operation of the bank; in others, they were guilty of such acts as would constitute misrepresentation, fraud, or deceit; in still others, their acts constituted *gross* negligence amounting to reckless disregard of depositors or to fraud, notable among such cases being *Boyd v. Schneider* (C. C. A.), 131, F., 223; *Delano v. Case,* 121 Ill., 247, 12 N. E., 676, 2 Am. St. Rep., 81; *Seale v. Baker,* 70 Tex., 283, 7 S. W., 742, 8 Am. St. Rep., 592; *Townsend v. Williams,* 117 N. C., 330, 23 S. E., 461; *Tate v. Bates,* 118 N. C., 287, 24 S. E., 482, 45 Am. St. Rep., 719; *Cunningham v. Shellman,* 164 Ky., 175 S. W., 1045.

But while these factors are frequently present in such cases and doubtless influenced the Courts in their decisions, there are cases, including at least some of those just mentioned, in which the liability is referred to a relationship of trustee and *cestui que* trust held to exist between the director and the depositor.

We have given long and painstaking consideration to this question, and we have reached our decision on what appears to be the weight of reason and authority. We are the more content with this conclusion because, in our opinion, to hold the directors of a bank liable as trustees for the depositors would place on them a burden not contemplated by the banking laws and not concordant with the banking usages and customs of the State.

We are not to be understood as saying that under no condition could a director be held liable to one injured through a deposit of money in a bank after it became insolvent; the facts and circumstances under which the deposit was made might be such as would amount to misrepresentation or fraud, and so render the directors liable to the injured depositor. *Giddings v. Baker,* 80 Tex., 308, 16 S. W., 33. No such facts, however, are alleged in the complaint in this case.

It may be well to add, before passing to the next phase of our discussion, that, on account of the peculiar nature and organization of savings banks in some jurisdictions, the directors of such banks are held to be trustees for the depositors. It is said that savings banks being organized without capital stock and their profits being paid to the depositors under a mutual plan of operation, the depositors stand in the same relation to them as that occupied by stockholders in commercial banks to such banks; and further, that, as savings banks are the repositories of funds of the poor, their management is safeguarded by an "elaborate statutory system," intended to protect the interests of depositors. The distinction between such banks and commercial banks is obvious. *Hun v. Cary,* 82 N. Y., 65, 37 Am. Rep., 546; *Williams v. McKay,* 40 N. J. Eq., 189, 53 Am. Rep., 775; *Greenfield Savings Bank v. Abercrombie,* 211 Mass., 252, 97 N. E., 897, 39 L. R. A. (N. S.), 173 Ann. Cas., 1913-B, 420.

II. We come now to the question of statutory liability. Section 3973, Vol. 3, 1922, Code, is as follows: "It shall be felony for any * * * director * * * of any banking institution to receive any deposits * * * after he shall become aware that such corporation is insolvent; * * * and [he] * * * shall become personally liable to the amount of such deposits * * * received by him, or with his knowledge or assent, in any such case, to the person thereby damaged. * * * *"

As already shown, the complaint alleges that at the time or times the deposits of the plaintiffs were accepted, the bank's insolvent condition "was well known to said defendants * * * or by the exercise of such care and diligence as was required of them by law as such directors, should have been known to them." This is a material allegation and is in the alternative. Under the rules of pleading, it does not charge that the insolvent condition of the bank was actually known to the directors when the deposits were made, but only that by the exercise of due care on their part such condition would have been known to them. 21 R. C. L., 451; *Greenfield Savings Bank v. Abercrombie,* 211 Mass., 252, 97 N. E., 897, 39 L. R. A. (N. S.), 173, Ann. Cas., 1913-B, 420; *Anderson v. Railway Co.,* 103 Minn., 224, 114 N. W., 1123, 14 L. R. A. (N. S.), 886. The question is, therefore, whether the directors are chargeable with liability under the statute if by the exercise of due care and diligence they would have known of the bank's insolvent condition.

The appellants contend that the spirit of the statute includes not only actual knowledge, but also the imputation of such knowledge as the directors would have had by the exercise of ordinary care, and that in testing their liability under the statute it should be presumed that they actually knew the fact of insolvency, if the exercise of reasonable

care and diligence would have made them aware of that condition.

The respondents, on the other hand, contend that before directors can be charged with personal liability it must be shown that they had actual knowledge of the bank's insolvency. On the question of the director's knowledge of insolvency, the statute uses the expression "after (he) * * * shall become aware that such corporation is insolvent." According to Webster's International Dictionary, "aware" means apprised; informed; cognizant; conscious. "Apprise" means to give notice, verbal or written; to inform. "Inform" means to communicate knowledge of or to; to make known; to advise; to tell, etc. "Cognizance" means apprehension by the understanding; conscious recognition or identification, etc. "Conscious" means aware or sensible (of an inward state or outward fact). It seems to us that under these definitions of "aware," which clearly reflect its ordinary, everyday meaning, the statute requires actual knowledge on the part of directors as a prerequisite to liability. As we have shown, there was no liability on the part of directors to depositors under the common law, and we think that the drastic liability imposed upon them by the statute should not be extended by the Court beyond that which the statute clearly implies under the common acceptation of the terms used.

In 3 R. C. L., at p. 474, it is said:

"In some jurisdiction statutes have made it a criminal offense for the officers of a bank to receive deposits after they have knowledge of the fact that the bank is insolvent, and it has been said that a bank officer who receives a deposit in violation of the statute is personally liable to the depositor for all damages proximately resulting. Other statutes expressly provide that the officer shall be personally liable for the deposits so received. To render a director, under such statutes, liable for deposits he must have had actual knowl-

edge of the insolvency of the bank, and 'actual knowledge' means a guilty knowledge, and not an innocent *bona fide* ignorance arising from neglect on his part to inquire into the financial condition of the bank."

*Utley v. Hill,* 155 Mo., 232, 55 S. W., 1091, 49 L. R. A., 323, 78 Am. St. Rep., 569, was a case brought by a depositor, under a statute, to hold the directors of a bank individually responsible for deposits made after the bank became insolvent. The statute in question was as follows:

"No president, director, manager, cashier or other officer or agent of any bank organized and doing business under the provisions of this Act or any law of this State, shall receive or consent to the reception of deposits or create or consent to the creation of any indebtedness" after he shall have had knowledge of the fact that "such association is insolvent or in failing circumstances. Every person violating the provisions of this section shall be individually responsible for such deposits so received and all such debts so contracted."

In construing the statute, the Court said:

"The word 'knowledge' here employed must be taken in its common acceptation; that is, in the plain or ordinary meaning and usual sense of the word. * * * It ought to be so construed that no man who is innocent can be punished or endangered. * * * So treated, we may properly look to the source to which men generally apply for the meaning of the word 'knowledge.' Webster's Dictionary defines 'knowledge': '(1) The certain perception of truth; belief which amounts to, or results in, moral certainty; indubitable apprehension.' '(5) Information; intelligence; as "to have knowledge of a fact." ' The knowledge which the law requires that a director shall have had means a guilty knowledge, not an innocent, *bona fide* ignorance arising from neglect to keep posted or to inquire. It must be construed to have been intended as a sword with which to punish the guilty, and a shield to pro-

tect the innocent. If this had not been the intention, the liability would have been made absolute and unqualified, instead of dependent upon knowledge. The framers of the organic and of the statute law must be held to have understood how the business of a bank is conducted. They must have known that the directors are drawn from the busiest men in the community; men who have carved success out of chaos, who have succeeded where the great multitude has failed; men who are not expected, and could not afford, to give their whole time to the business of the bank. The lawmakers knew that the active management of a bank usually devolves upon the president and cashier and that to the latter is usually intrusted the management of the details. They knew that few directors had the time, and fewer still the capacity, to examine the books of a bank, and ascertain its solvency; that even in their own business they could not take off a trial balance from the books they employed experts to keep for them, either because they had not time to do so for themselves, or because they did not have the capacity to do so. The law imposes a liability on directors of a bank which directors of no other corporation are subject to. It is a liability which is not limited to any specific amount; it is as broad as the wrongdoing—the fraud—of the director. It is a personal liability for every cent a depositor lost which a director consented to have deposited in the bank after the director shall have had knowledge of the insolvency of the bank or that it was in failing circumstances. It is an unlimited liability, but it is not an absolute one. It is qualified by a condition the existence or nonexistence of which may make the director liable for the total amount lost by the depositor, or may not make him liable for a cent thereof. The liability is measured by the knowledge."

*Minton v. Stahlman,* 96 Tenn., 98, 34 S. W., 222, was an action by a depositor against the officers and directors of a

defunct bank to hold them individually liable for the loss of a deposit claimed to have been made at a time when the bank was insolvent.

The plaintiff charged that the defendants, "having due notice and knowledge of such facts and circumstances as, by ordinary diligence and business skill would have shown them its true financial condition, which was that of insolvency, and having reason and cause to know that any one depositing money or evidences of debt therein for collection, was liable to lose the money so deposited or collected, by reason of its insolvency, etc., did continue to keep open, and operate the same as a bank, and invite the custom and patronage of plaintiff and others; and that plaintiff, being induced thereby, and deceived and misled by such wrongful act of defendants, did, on or about the 25th day of February, 1893, deposit therein the sum of $1,197.60. There was repaid to plaintiff the sum of $200, but the remainder is yet due and owing, though demanded."

The defendants demurred to this charge on the ground that: "They are not liable as directors of the Bank of Commerce for receiving deposits when they merely had notice or knowledge of facts and circumstances which, by use of ordinary diligence and business skill, would have shown the said Bank of Commerce to be insolvent. In order to be liable, it must appear that they knew the said bank to be insolvent, and willfully and knowingly received the deposits."

After holding that, aside from statutory provisions, directors are not liable to depositors in an action at law by a depositor unless the deposit was induced by the fraudulent conduct of the director, the Court proceeded to a consideration of the directors' liability under a statute of Tennessee (Milliken & V. Code, § 2507), which provided as follows:

"And if any director or directors of any of the banks in this State shall be guilty of any fraud or willful mismanagement of the affairs of such bank, by which any loss shall be

occasioned to its creditors, such director or directors, upon legal ascertainment of the fact, shall be individually liable for such loss."

In sustaining the demurrer on this point, the Court said:

"It is not tantamount to a charge of intentional fraud or willful mismanagement to allege that, 'having due notice and knowledge of such facts and circumstances as, by ordinary diligence and business skill, would have shown them its true financial condition, which was that of insolvency.' This, at most, is a charge of negligence and inattention, whereas, there is no liability to creditors or depositors, under this statute, without fraud or willful mismanagement."

While the ground on which directors were made liable by this statute was specifically stated to be "fraud or willful mismanagement," it must be borne in mind that knowledge is an essential element of fraud or wilfulness, and the case is cited for the purpose of showing that knowledge of the insolvency is not to be imputed to the directors from knowledge of such facts and circumstances as by ordinary care would have shown them the condition of insolvency.

In *Mason v. Moore,* 73 Ohio St., 275, 76 N. E., 932, 4 L. R. A. (N. S.), 597, 4 Ann. Cas., 240, the Court, construing a federal statute as to the liability of directors of a national bank says:

"As to the liability of the bank and its directors, U. S. Rev. Stat. § 5239 (U. S. Comp. Stat. 1901, p. 3515 [12 U. S. C. A. § 93]), provides: 'If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate, any of the provisions of this title, all the rights, privileges, and franchises of the association shall be thereby forfeited, * * * and in cases of such violation every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or

any other person, shall have sustained in consequence of such violation.' We have in this section the statutory standard of liability, and it relates to every director who 'participated in or assented to' the violations of the provisions of the title of which said section forms a part. If he did not participate in or assent to such violation, this statute fixes no individual or personal liability against him. In this case there was no evidence tending to prove that the defendants participated in or assented to any violation of the banking statute, except such participation or assent as may be ascribed to the attestation of the bank's report; and it would seem that such an act will not be sufficient to establish the participation and assent contemplated and penalized by the statute. Participating and assenting both imply affirmative action of some sort, as distinguished from mere silence and inaction."

*Patterson v. Minnesota Manufacturing Co.*, 41 Minn., 84, 42 N. W., 926, 4 L. R. A., 745, 16 Am. St. Rep., 671, was a suit by a creditor against a corporation and one of its directors.

A statute of the State of Minnesota (Gen. St., 1878, C., 34, § 142) contained certain provisions regarding the duties of directors of corporations. The section of the statute under which the action was brought provided that if any corporation organized under the authority of the act "shall violate any of its provisions, and shall thereby become insolvent, the directors ordering or assenting to such violation shall be jointly and severally liable, in an action founded on this statute, for all debts contracted after such violation."

The complaint charged violation of the statute by the directors through a loan of the corporation's credit as a maker or indorser upon an accommodation paper, and that in consequence thereof the company became insolvent. The Court said:

"Plaintiff's contention is that it is the duty of a director to know what is being done in corporate matters; that it is negligence for him not to know, and therefore he is conclusively presumed to have known, and, not objecting he must be deemed assenting. Such a construction would impose this severe statutory liability for at least every act of mere negligence for which he would be liable at common law; but, as the act is highly penal, we do not think it ought to receive so broad a construction. The language of the various sections all tends to indicate that the Legislature intended that something more than mere negligence should be necessary to subject a person to those heavy penalties, something amounting to willful, or at least intentional, violation of legal duty, either ordering the act done, participating in doing it, or assenting to its being done with knowledge that it was being, or about to be, done."

Other authorities might be cited in support of our conclusion, but they would add nothing to what has been said. Under our construction of the statute, it imposes a liability upon the directors for every cent lost through deposits made in an insolvent bank at such times as the directors had actual knowledge of its insolvency; but the fact of such knowledge must be alleged in order to state a cause of action under the statute. As we have already indicated, under the allegations of the complaint this fact does not appear.

We may add, in passing, that in the argument here the respondents contended that the complaint is bad on account of misjoinder of causes of action. This point was not raised by demurrer and was not before the Court below, so it will not be considered here. *Hickson v. Early,* 62 S. C., 42, 39 S. E., 782; *Sanders v. York County,* 106 S. C., 374, 91 S. E., 305; *Savannah Chemical Co. v. Johnson,* 105 S. C., 213, 89 S. E., 810.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE BLEASE concur; MR. JUSTICE COTHRAN dissents; MR. JUSTICE CARTER did not participate.

MR. JUSTICE BLEASE (concurring): In the absence of any legislative enactment or former decision of this Court holding a director of a banking institution personally liable to a depositor for the loss of his deposit because of the mere negligence of the director in attention to his duties, without fraud, deceit, or misrepresentation on the director's part, I am not inclined to agree that such director should be held liable. Throughout the history of banking in South Carolina, it has not been considered that directors of such institutions were personally liable to depositors for losses sustained by them for the mere negligence of the directors. While the General Assembly has not directly legislated as to this matter, I think its failure to legislate thereabout, taken in connection with the many statutes passed concerning the conduct of banking institutions and the officers and directors thereof, may be deemed to imply that the lawmaking body has not conceived it to be proper to hold directors responsible direct to depositors for the simple negligence of the directors.

Section 3973, Vol. 3, Code of 1922, and Section 241 of Volume 2 of the Code, which are identical, condemn as a felony the act of an officer or director of a banking institution in the receipt of a deposit, after such officer or director has become aware that the corporation is insolvent. The same sections provide that the officer or director of the failing corporation shall only become personally liable for the amount of the deposit actually received by him, or when it has been received by another with the officer's knowledge or assent; and, in either instance, only when he is aware of the insolvency.

Stockholders of banks (and only stockholders can become directors), when said banks become insolvent, are liable to

depositors therein in a sum equal in amount to their stock over and above the face value of the same. Section 3998, Vol. 3, Code of 1922.

Directors of banks are limited in certain ways in borrowing money from the institutions of which they are directors. Section 4000, *Ibid.*

Directors are forbidden from declaring dividends not actually earned, and they shall not make false statements in regard to the financial condition of their institutions, under the provisions of Section 244, Vol. 2, Code of 1922.

I take it that when the Legislature have been so active from time to time in making regulations concerning banking institutions, and have sought in so many ways, including some of those to which I have referred, to hold directors in these institutions civilly and criminally liable for certain acts of omission and commission, their failure to positively declare directors liable to depositors for negligent acts alone is an indication that it has not been the intention of the law-making power to hold directors responsible to depositors on that account.

In the organization and conduct of banks, those who have accepted places as directors, except when the law has specifically declared otherwise, have been led to believe that it was only required of them to elect or employ persons whom they thought honest and competent to manage the affairs of the bank. When a director has not *knowingly* committed some act, which tended to mislead or deceive some other person in his dealings with the bank, the director, because of the general view held by the people, may have been justified in feeling that he was without fault.

The truth of the matter is that in the past the position of bank director, generally, has been regarded as one of honor, with little or no work to be performed by him. Thousands of honest men, and many of these with no experience in banking and very little education, have accepted positions as

directors with the idea of contributing some service to the communities in which they resided. They doubtless knew that if they committed some positive act of wrongdoing in connection with the management of the bank, they would be liable both civilly and criminally. Most of them were aware also, if the bank failed, that they would have to pay losing depositors the statutory assessment on their stock. It never occurred to a single one of them, in my opinion, that because they failed to daily keep up with what the president, cashier, teller, and other employees of the bank were doing they would be held civilly liable to each and every depositor of the institution for any loss he might sustain. If this kind of liability had ever been understood, I doubt if there would have been many instances where a sufficient number of persons could have been secured to fill the directorate of any bank, unless all of the directors were given good paying positions in the institution. I think it would be a judicial wrong for this Court at this late day, without direct legislative authority to that effect, and with no precedent of this Court to sustain it, to declare a policy entirely inconsistent with that so generally held heretofore, not only by members of the bar, but by our people as a whole. In this situation, I feel that my view is supported by the reasoning of Hon. William R. Allen, a distinguished jurist of the Supreme Court of North Carolina, when he declared in a case where the people had been led to believe the law otherwise than that then suggested:

"As eminent authority may be found for either position, and we have no precedent in this State to guide us, we must adopt that rule which in our opinion accords with the habits and customs of our people, and which will, in the majority of cases at least, be conducive to the settlement of controversies of this character, according to the right." *Wicker v. Jones,* 159 N. C., 102, 74 S. E., 801, 40 L. R. A. (N. S.), 69, Ann. Cas., 1914-B, 1083.

It may be that an ordinary director of a bank should be, in the future, mere alert and active in the discharge of his duties than he has been in the past, and it may be proper for the General Assembly to expressly require him so to be. That is a matter, as I conceive it, for that authority rather than one for this Court.

MR. JUSTICE COTHRAN (dissenting) : In my opinion the order of his Honor, Judge Dennis, sustaining the demurrer to the complaint, was erroneous and should be reversed. I therefore dissent from the opposite conclusion announced in the opinion of Mr. Justice Stabler, for the reasons which follow.

This is really an action in tort, instituted by the eight plaintiffs, as separate, individual depositors in the Bank of Latta, against the directors of that bank, for damages resulting to them from the loss of their deposits, on account of the insolvency of the bank.

Objections to the complaint upon the ground of misjoinder of actions or that the complaint does not state facts sufficient to constitute a cause of action, as indicated in the case of *Fant v. Brissey,* 143 S. C., 264, 141 S. E., 450, have not been presented and will not be considered.

The gist of the charge of wrongful conduct on the part of the defendant directors is that, during the period within which the plaintiffs made deposits, the bank was insolvent; that its condition "was well known to the defendants (one of whom, I interpolate, was president of the bank, another was its cashier, and a third was chairman of the finance committee), or by the exercise of such diligence as the law requires and required of them as its directors should have been well known to them"; that notwithstanding such condition, the bank continued to do "business as usual," its open doors an uninterrupted operation inviting deposits; that the plaintiffs were induced by the confidence thus engendered to make their deposits unaware of the condition of the bank;

and that owing to the insolvency of the bank these deposits, with the exception of a 10 per cent. dividend declared, have been wholly lost.

It will be assumed in this discussion that the alternative allegation that the defendants knew or should have known of the condition of the bank, as held in the opinion of Mr. Justice Stabler, amounts simply to a charge of negligence in not ascertaining and reporting the condition, and thus saving the plaintiffs from the losses sustained.

The defendants interposed a demurrer to the complaint upon various grounds. As the order of his Honor, Judge Dennis, sustaining the demurrer is based upon only one ground, and as no motion has been made to sustain the order upon any other, the order only needs to be set forth. It is as follows:

### "ORDER

"The above matter comes before me on demurrers of the several defendants, challenging the sufficiency of the complaint on the ground that the same does not state facts sufficient to constitute a cause of action. The matter has been fully argued before me by counsel for plaintiffs and defendants. It seems to me to be very clear that the sufficiency of the complaint must be tested by the provisions of Section 3973, of Volume 3, of the Code of 1922 (this provision being also contained in the Penal Code, Volume 2, where it is designated as Section 241). Unless a cause of action is set forth within the terms of that statute, I do not think that the plaintiffs can maintain the present action.

"Viewed in this light, it seems to me that the complaint undertakes to state a cause of action that would render the defendants liable to the plaintiffs on grounds and under conditions other than those set forth in the statute, and for this reason I think that the demurrers should be sustained.

"A further ground of demurrer relied upon by the defendants is that the liability created by the statute referred to is

limited to officers of banks, whereas in the present case the defendants are charged with liability as directors, and it is contended that directors are not officers within the meaning of the statute. I have carefully considered the arguments relating to this ground of demurrer, but do not think that they are sound. My view is that the word 'Officer' includes a director. It is, therefore,

"*Ordered, Adjudged, and Decreed,* That the demurrers to the complaint be, and the same hereby are, sustained with leave to the plaintiffs to serve an amended complaint on the defendants, if they should be so advised within 20 days after the date hereof."

It thus appears that the conclusion of the Circuit Judge was, in effect, that as the complaint did not state facts sufficient to constitute a cause of action, *under Section 3973, Vol. 3, Code, 1922,* against the directors, the demurrer had to be sustained. He made no reference to what the plaintiffs contend, that, regardless of the statute, a depositor who may have been *personally* wronged by the negligence of the directors has a cause of action for damages resulting from such negligence.

As pointed out by this Court in the case of *State v. Lewis,* 141 S. C., 207, 139 S. E., 386, there is a marked distinction between the essential elements of *criminal* liability and of *civil* liability under the statute (Section 3973 of Volume 3 of the Code, and Section 241 of the Criminal Code, duplicates).

The criminal liability attaches upon proof that the officer *personally received* deposits after he had become aware that the corporation was insolvent. It was held in that case that a conviction could not be sustained unless the officer *actually received the deposit;* that even if he knew of the receipt by another, he could not be convicted.

The civil liability attaches upon proof that the officer either personally received the deposit, or that it was received with his "knowledge or assent." It will be observed that the phrase "after he shall become aware that such corporation

is insolvent," which is specifically made an element of *criminal* liability, does not appear in that portion of the section defining the elements of *civil* liability; that portion reads:

" * * * And every officer of such failing corporation shall become personally liable to the amount of such deposits or trusts received by him, or with his knowledge or assent, *in any such case,* to the person thereby damaged. * * * "

It may be contended that the phrase "in any such case" was intended to prescribe the same conditions as were prescribed in the criminal liability portion of the section; that is, the condition that the officer must have been "aware that such corporation is insolvent." It is not at all clear that this view may be sustained; it is very clear that the statute intended to make a difference between the two forms of liability; and as it was so easy to have reproduced the condition in imposing civil liability, its omission may be assumed to have been intentional. It is but natural that the definition of a criminal offense, a felony, would have included elements which were not called for in the definition of a civil liability. "In any such case" apparently covered the elements immediately preceding; the failing corporation, and the receipt of the deposits by the officer or by some other employee with his knowledge or assent.

If this be the proper construction of that portion of the section defining civil liability, then the positive knowledge by the directors of the insolvency of the bank is not a necessary element in civil liability, and the complaint would be sufficient in its charge that the deposits were received either with knowledge of, or assent to, the receipt of deposits when the bank was in failing circumstances; for it is impossible to conceive that they could have been received without the knowledge or assent of at least the president, cashier, or chairman of the finance committee.

But, assume that an element in the officer's civil liability was intended to be "after he shall become aware that such

corporation is insolvent," it does not follow that the statute was intended to wipe out any and all rights and causes of action which the depositor, under other circumstances, may have possessed. The fact that the officer was made liable civilly if he received, or had knowledge of, or assented to, the receipt of a deposit, at a time when he was aware that the bank was insolvent, cannot destroy a remedy which the depositor may have had for damages resulting to him personally, from the negligent conduct of the directors.

As the Court held in *Kaminitsky v. R. Co.*, 25 S. C., 53, referring to the statutory crossing signals:

"They did not take away the common law right of action, by giving in lieu thereof a new cause of action under the statutes. * * *"

Mr. Morse strikingly expresses the idea, " * * * Dextrous and subtle evasions of the language of the statute will not enable the directors to frustrate its intent, or to shun a responsibility which is fastened upon them by extrinsic principles of law wholly outside of the statute or the charter, and quite independently of either," in Morse, Banks (5th Ed.), p. 280.

In the opinion of Mr. Justice Stabler it is stated:

"The present case, however, is not grounded on fraud or deceit, but only on passive negligence; and the question at issue therefore is whether, under the common law, a director who negligently allows a deposit of money in an insolvent bank, after he knows or should have known by the exercise of due care that the bank was insolvent, is liable to the depositor suffering loss on account of the insolvency."

I am not so sure that directors, whose names as men of business ability are gazetted to the world as vigilant and capable of protecting deposits, who are so careless in discharging the duties which they have assumed as not to know the condition of their bank, and allow it to keep its doors open, continue in business, inviting the confidence of depositors, do not evince an element of deceit, and are guilty only

of "passive negligence." It appears to me that the continued exercise of their duties as directors, which must be presumed so long as the bank was open for business, is something more than passive negligence, if they knew or ought to have known that the bank was insolvent. In fact, it appears to be the "conscious failure to observe due care," which is willfulness.

The learned Justice passes from the real question in the case which he states: "Whether under the common law a director who negligently allows a deposit of money in an insolvent bank, after he knows or should have known by the exercise of due care that the bank was insolvent, is liable to a depositor suffering loss on account of the insolvency," and concludes, from an array of authorities which are not questioned, that, because, in the case of *a wrong done to the corporation,* there is no such relation of trust between the directors and the depositors as to give the depositors a cause of action against the directors for the *indirect* loss they may have sustained by reason of the breach of the directors' obligations *to the corporation,* the depositors have no cause of action against the directors on account of a wrong *done directly to them.*

There is very respectable authority for the proposition that the directors of a bank are trustees, not only for the corporation and its stockholders, but also for its general creditors and depositors, particularly for depositors.

Chancellor Kent has said in 2 Commentaries, 307, note b:

"The received doctrine now is, as shown by the statutes and judicial decisions, that the capital and debts of banking and other moneyed corporations constitute a trust fund and pledge for the payment of its creditors and stockholders; and a Court of Equity will lay hold of the fund and see that it is duly collected and applied."

This doctrine is not limited to the status of the corporation after insolvency, but is applicable to it while a going concern. If a trust fund, there must be trustees; the di-

rectors are the trusted agents of the corporation, and their position must, of necessity, be that of trustees.

In *Trustees of Mutual Building Fund & Dollar Savings Bank v. Bosseiux* (D. C.), 3 F., 817, the Court said:

"Moreover, all authorities now tend to the conclusion that directors of banks and other moneyed corporations hold the relation to stockholders, depositors, and creditors of trustees to *cestui que* trust, and as such are personally responsible for frauds and losses resulting from gross negligence and inattention to the duties of their trust."

The observations of the Circuit Court of Appeals in the case of *Boyd v. Schneider,* 131 F., 223, are interesting:

"The relation of depositors to the bank, and so far as directors stand liable for the doings of the bank, the relation of the depositors to the directors, while that of debtor and creditor, is something more than the mere relation of debtor and creditor. The contract of deposit is a loan; but not a loan pure and simple. On the acceptance of the deposit, a promise is raised that the bank will repay it on demand, or at the time stipulated; and to that extent the transaction is a loan. But when this much is said, the whole contract is not stated. The parties deal with each other on a basis, not merely that of borrower and lender, but on the basis, that the party receiving the money is a bank, organized under the laws of the United States, and subject to the provisions of law, present and future, relating to the custody and disposition of the money deposited; and that the party loaning the money is a depositor, leaving his money with the bank on the faith that such provisions respecting the custody and disposition of the deposit, will be observed. In legal effect, the depositor says, Here is my money; in consideration of its reception, and such interest as you pay, you can have its use; but only on this condition, that the use conform to the safeguards provided by the law. The acceptance of money thus tendered, implies that the bank and its directors, so far as they are responsible for the doings of the bank, agree to

conform to the conditions named. The law governing the custody and disposition of deposits thus enters into and forms a part of, the relation created between the parties, * * * thereby creating direct privity of relation between the directors and the depositors."

The precise point arose in the case of *Delano v. Case,* 121 Ill., 247, 12 N. E., 676, 2 Am. St. Rep., 81, where it was held:

"1. That the directors of a bank are trustees for depositors as well as for stockholders; 2. That they are bound to the observance of ordinary care and diligence, and are hence liable for injuries resulting from their nonobservance; and 3. That the present appellants did not observe that degree of care and diligence, and in consequence thereof appellee sustained the damages for which the judgment was rendered."

In Morse, on Banks, 133, it is said:

"If bank directors do not manage the affairs and business of the bank, according to the directions of the charter, and in good faith, they will be liable to make good all losses which their misconduct may inflict upon either their stockholders or creditors, or both. (*Hodges v. New England Screw Co.* [R. I., 312, 53 Am. Dec., 624], *supra.*) They may be held to account to an injured party in a Court of Chancery (*Bank of St. Marys v. St. John,* 25 Ala., 566); or they, or any one of their number who shared in the wrong doing, may be sued at law for damages. (*Conant v. Seneca Co. Bank,* 1 Ohio St., 298.) They are required simply to show a reasonable capacity for the position they accept, to use it in their best discretion and industry, to show the scrupulous *bona fides* and conscientiousness in every matter, however minute, which is exacted rigorously of all trustees of the property of others, and to obey accurately the requisitions of the charter or of the general law under which they are organized."

In *Seale v. Baker,* 70 Tex., 283, 7 S. W., 742, 8 Am. St. Rep., 592, the Court said:

"Directors of banking corporations occupy one of the most important and responsible of all business relations to the general public. By accepting the position and holding themselves out to the public as such, they assume that they will supervise and give direction to the affairs of the corporation, and impliedly contract with those who deal with it that its affairs shall be conducted with prudence and good faith. They have important duties to perform toward its creditors, customers, and stockholders, all of whom have the right to expect that these duties will be performed with diligence and fidelity, and that the capital of the corporation will thus be protected against misappropriation and diversion from the legitimate purposes of the corporation. Customers are invited to business relations, and are induced to accept and act upon such invitation by the representations that the institution is solvent and owns a certain amount of capital, and that this capital is under the supervision and control of certain directors. It is the duty of directors to know the condition of the corporation whose affairs they voluntarily assume to control, and they are presumed to know that which it is their duty to know, and which they have the means of knowing."

"It is the duty of officers of a banking institution receiving or assenting to the reception of deposits to know the financial condition of the bank, and the law presumes they do know it." *Eads v. Orcutt,* 79 Mo. App., 511.

In *Ellis v. H. P. Gates Mercantile Co.,* 103 Miss., 560, 60 So., 649, 43 L. R. A. (N. S.), 982, Ann. Cas., 1915-B, 5, the Court said:

"The bill in this case sufficiently charges that the directors failed to use proper care and diligence in the management of the affairs of the bank, and that they neglected to perform the duties imposed upon them by the by-laws; that they ought to have known, and by the use of ordinary

care, such as it was their duty to exercise, should have known, the condition of the bank, the defalcations, and improvident and reckless conduct by the cashier whom they employed, and finally its insolvency; that their neglect to carry out the plain requirements of the by-laws resulted in the failure of the bank, and loss to the depositors and stockholders. The directors were elected by the stockholders and were surely directly responsible to them for the proper management of the bank. The relation of the depositors to the bank, growing out of their placing their money with that institution for safekeeping, and to be at their convenience drawn out for their use, is such that the directors, as the officers charged with the management of the bank, are required to be diligent and careful in conducting the bank's business, and are liable to the depositors for losses sustained by the bank from negligence in performing the duties of their office. It is the duty of a director to know the condition of his bank, and to see that its affairs are honestly and properly managed. He cannot shirk this duty and avoid liability."

In *United Society of Shakers v. Underwood,* 9 Bush. (Ky.), 609, 15 Am. Rep., 731, it is held that directors of a bank may be liable, upon the ground of negligence or mismanagement, to special depositors whose deposits are lost in consequence of such negligence or mismanagement.

"The directors of a bank are trustees for depositors, and can be held for injuries resulting from gross negligence on their part in allowing the bank to be held out to the public as solvent when it was, in fact, insolvent." 1 Morse, Banks (5th Ed.), page 282, citing *Delano v. Case,* 121 Ill., 247, 12 N. E., 676, 2 Am. St. Rep., 81; *Foster v. Bank* (C. C.), 88 F., 604; *Holmes v. McDonald,* 226 Ill., 169, 80 N. C., 714; *Lippitt v. Ashley,* 89 Conn., 451, 94 A., 995.

In Morse, Banks (5th Ed.), § 130, it is said: " * * * In commercial banks the better opinion is that, though the officers are liable only to the bank for ordinary negligence,

they are liable to third parties for gross neglect," citing *Union Nat. Bank v. Hill,* 148 Mo., 380, 49 S. W., 1012, 71 Am. St. Rep., 615 (cited in the opinion of Mr. Justice Stabler); *Deaderick v. Bank,* 100 Tenn., 457, 45 S. W., 786; *Elliott v. Bank,* 61 W. Va., 641, 57 S. E., 242.

I cannot imagine conduct on the part of directors which could more aptly be described as "gross neglect" than to allow an insolvent bank to invite deposits by the opening of its doors and continuing its banking operations, without ascertaining the condition of the bank. I cannot conceive of a more imperative duty in connection with the trust undertaken by the directors for the corporation, its stockholders, general creditors, and depositors, than to be constantly informed of the bank's condition.

It is more than the directors are entitled to, to limit their liability to *gross negligence.* If they owe the duty of *ordinary care* to the corporation and to its stockholders, as beneficiaries of that obligation, the depositors who are most directly concerned in the discharge of that obligation have an unquestioned right to sue for damages on account of its breach.

This case turns upon the question whether the directors of a bank owe any duty to the depositors who have put their money into the bank upon their faith and confidence in the officers in control of the bank. If they owe no duty to the depositors, and, though their names are advertised as men of ability and integrity and vigilance in the conduct of the affairs of the bank may neglect their official duties and bring disaster upon the depositors, the depositors have no recourse against them.

I do not subscribe to such a proposition, and, in the light of the deplorable consequences which have come upon men and women, upon widows and orphans and trust estates, within the last few years, due to the neglect and mismanagement of officers and directors of banks, it will be many moons before I do. I do not think that now is the

time to slacken the reins upon these officers whose responsibilities are great and which have been voluntarily assumed. It may be a distinct shock to some of them to learn that it is the duty of directors to direct.

Deposits constitute the life blood of a bank. It is upon them that make their profits; without them the bank would close its doors and hand back to its stockholders the amounts subscribed to the capital stock, that it may be privately invested. They are the most important feature of a bank. The reputations and characters of its officers and directors are gazetted to the world for the purpose of inducing deposits— an implied guaranty that the deposits will be in safe hands and returnable upon demand.

While I feel satisfied that the wisdom and justice of the law constitute the directors, with an unquestioned duty to perform for the benefit of the depositors, trustees for them, the question is not to be decided upon the existence or nonexistence of such relation. Every one knows that the relation between a depositor and the bank is that of creditor and debtor; every one knows, too, that the directors are the managing agents of the bank, and, as such, trustees for the corporation and its stockholders; every one knows, too, that the directors owe a contract and legal duty to the corporation to manage its affairs with vigilant care, which necessarily embraces protection to the corporation from its general creditors and depositors; every one knows, too, that the directors owe a duty to the stockholders to so manage the affairs of the bank that there will be no statutory liability upon the stockholders to depositors; every one should know that where an obligation is assumed by a person to another, which redounds, even indirectly, to the benefit of a third person, not even a party to the engagement of such person, the third person is entitled to recover for the damage resulting to him from the breach of such engagement.

As is declared in the case of *Standard Oil Co. v. Powell Paving & Contracting Co.,* 139 S. C., 411, 138, S. E., 184:

"It is a settled principle of law that a contract [and I interpolate, an obligation implied by law] between two persons for the benefit of a third, even though he be not named therein, can be enforced by such third party."

To this effect are also the cases: *Mack Mfg. Co. v. Massachusetts Bonding & Insurance Co.,* 103 S. C., 55, 87 S. E., 439; *Duncan v. Moon,* Dud., 322; *Dehay v. Porcher,* 1 Rich. Eq., 266; *Brown v. O'Brien,* 1 Rich., 268, 44 Am. Dec., 254; *Thompson v. Gordon,* 3 Strob., 196; *Butler v. Tel. Co.,* 62 S. C., 222, 40 S. E., 162, 89 Am. St. Rep., 893; *Ancrum v. Walter Co.,* 82 S. C., 284, 64 S. E., 151, 21 L. R. A. (N. S.), 1029.

When the directors were elected, assumed the office, undertook to discharge its duties, and published their names to the world as the responsible and vigilant agents of the bank, they impliedly obligated themselves to supervise and manage the business so that the interests of those who were induced by their representations to make deposits should be protected; that the corporation, within whose fold were the interests of the stockholders, should not suffer loss, to the detriment of the stockholders; and that the stockholders would not be called upon to respond to their statutory liability to the depositors in the event of insolvency of the bank.

The depositors therefore, were the beneficiaries of the implied contract and legal obligations of the directors to the corporation, although not immediate parties thereto; they were vitally interested in the fulfillment of the obligations of the directors both to the corporation and to its stockholders. If it should be held that the directors owed no duty to the depositors, and therefore assumed no liability for their acts which caused loss to them, the depositors' only recourse would be against the stockholders upon their stat-

utory duty, and the obligation of the directors to the stockholders, to protect them against this liability, would be broken.

There can be no controversy as to the proposition that a cause of action against the directors of a bank for losses *to the bank,* as a result of the negligent mismanagement of the affairs of the bank by the directors, lies in the corporation, as an asset of the corporation, and that a creditor (general or by deposit) can sue only in the right of the corporation, after having taken the necessary steps to induce action by the officers of the corporation.

That doctrine is clearly announced in the case of *Browne v. Hammett,* 133 S. C., 446, 131 S. E., 612, with which conclusion the writer certainly is not in a position to complain:

"The right of action against the officers and directors of a corporation for their negligent and wrongful acts *causing loss to the corporation,* is one which is vested in the corporation, and can only be enforced by the corporation, or in its right, for the benefit, as an asset, of those lawfully entitled to an interest in the assets of the corporation."

The distinction, I respectfully submit, has been lost sight of in the opinion of Mr. Justice Stabler, between a cause of action which is inherently an asset of the corporation and a cause of action which is not but is inherently a personal claim of a depositor on account of a wrong *done to him, not to the corporation.*

The distinction is clearly developed in the case of *Killen v. Barnes,* 106 Wis., 546, 82 N. W., 536.

"There are numerous cases where the distinction has not been clearly recognized, if at all, between a wrong to a depositor of a bank committed by its officers, for which they are personally liable directly to such depositor on the ground of deceit, and a wrong by such officers to the corporation for which they are liable to such corporation and through it to the creditors. *Leland v. Case* [*supra*], is a good specimen of such cases."

If the directors have so acted as to cause a loss to the corporation, it, of course, has a cause of action against them, as in the negligent mismanagement of the affairs of the bank which has caused a loss *to the corporation.* But where depositors have been induced to make deposit upon the implied representation of the directors that the bank is solvent—a representation implied by the conduct of the directors in keeping the bank with open doors, inviting deposits—the wrong is not done to the corporation, but to the depositors.

The cause of action alleged in the complaint is not one that adheres to the corporation. It has no right to sue the directors for a return of the money deposited by the plaintiffs; it has already passed that money into its treasury and wasted it; it cannot claim the right to receive it again. No one is entitled to that money except the depositors; the right is one that adheres to them, and to them only. It appears to me illogical in the extreme to turn the depositors out of Court upon the ground that the suit can be brought only in the right of the corporation, when it appears so plainly that the corporation has no right.

When it is considered that the directors were under an obligation to the corporation to so manage its affairs that, upon demand, the corporation should be able to respond to the checks of the depositors, and not be called upon to sacrifice its property in order to do so, I have no doubt but that the corporation could maintain an action against the directors to compel them to restore those deposits *for the benefit of the depositors,* and indirectly to relieve the corporation from its obligation to them. If so, there can be no necessity for such circumambulation when the present action would accomplish the same purpose; particularly, in view of Section 354 of the Code, which *requires* that all actions be prosecuted in the name of *the real party in interest.*

When it is considered, too, that the directors were under an obligation to the stockholders, for whom they were ad-

mittedly trustees (no question as to that), to so manage the affairs of the bank that the statutory liability of the stockholders to the depositors would not be created or increased, I have no doubt but that the stockholders as *cestuis que trust,* could maintain an action against the directors to compel them to restore these deposits *for the benefit of the depositors,* and indirectly to relieve them from their statutory liability. If so, there can be no necessity for such circumambulation when the present action would accomplish the same purpose; particularly in view of the section of the Code above referred to, as to the real party in interest.

The stockholders would be interested from another angle: The wrong of the directors increased the liabilities of the bank to the extent of the claims of the depositors, and correspondingly decreased the dividends which the stockholders would be entitled to.

The cases cited in the opinion of Mr. Justice Stabler are practically without exception, cases involving causes of action vested *in the corporation:*

*Briggs v. Spalding,* 141 U. S., 132, 11 S. Ct., 924, 35 L. Ed., 662. Decided upon the finding that the directors had not been guilty of negligence. It, of course, has no application to the case at bar, except as to the inference to be drawn from the fact of the discussion and conclusion of no negligence, that liability would have attached if the conclusion had been otherwise.

*Swartley v. Oak Leaf Co.,* 135 Iowa, 573, 113 N. W., 496. This was a case based upon a wrong done to the corporation, and not to the individual depositor.

*Hart v. Evanson,* 14 N. D., 570, 105 N. W., 942, 3 L. R. A. (N. S.), 438. The decision in this case is based upon what I consider a most fundamental error: That "creditors (which, I interpolate, includes depositors) of the corporation are utter strangers to the obligations of the directors

to the corporation." This cannot be the law for the reasons indicated above.

*Union Nat. Bank v. Hill,* 148 Mo., 380, 49 S. W., 1012, 71 Am. St. Rep., 615. This was an action by general creditors of a bank against the directors, charging that the mismanagement had caused the insolvency of the bank and consequent loss. The Court naturally held that the alleged cause of action, which was a wrong against the corporation, could not be enforced in the right of general creditors.

*Savings Bank v. Caperton,* 87 Ky., 306, 8 S. W., 885. This was an action based upon the embezzlement of the cashier, which was clearly a loss to the bank and not a wrong personal to a depositor. It could only be redressed in the right of the corporation.

The other cases cited are of the same character as readily appears from the statements in the opinion: The quotations from textbooks plainly are applicable to cases in which a depositor seeks to enforce for his personal benefit a cause of action which is enforceable only by the corporation.

In *Hodges v. New England Screw Co.,* 1 R. I., 312, 53 Am. Dec., 624., the action was by a stockholder against the directors for loss *to the corporation* caused by their negligence and fraudulent mismanagement. It was held, of course, that the action could only be maintained in the right of the corporation.

*See Bowerman v. Hamner,* 250 U. S., 504, 39 S. Ct., 549, 63 L. Ed., 1113.

I do not understand that the majority opinion precludes an action by the stockholders, general creditors, or depositors, *in the right of the corporation,* against the directors for negligent mismanagement of the affairs of the bank, under the case of *Browne v. Hammett* and others.

I cannot conceive, as suggested in the concurring opinion of Mr. Justice Blease, that a controlling factor in the case

is the supposed common impression among directors that they may not be held liable to an innocent depositor for the consequences of their unquestioned negligence in permitting the insolvent bank, whose condition they should have known, to remain open for the reception of deposits from unsuspecting and misled depositors.